Jacob A. Gillick, SBN 312336
Jgillick@gillicklegal.com
Gillick Legal, APC
1420 Kettner Blvd. Suite 108
San Diego, CA 92101
Telephone: (858) 250-0656

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIBRIO, LLC<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>FLEX MARKETING, LLC and DOES 1-100, inclusive,<br><br>　　　　　Defendants. | Case No. 3:23-cv-01167-LL-BGS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT FLEX MARKETING, LLC'S MOTION TO DISMISS**<br><br>The Honorable Linda Lopez<br>Hearing Date: January 31, 2024 |

**TABLE OF CONTENTS**

I.   **INTRODUCTION** ------------------------------------------------------------------------------------- 1

II.  **STATEMENT OF FACTS** ------------------------------------------------------------------------ 2

III. **STATEMENT OF LAW** ----------------------------------------------------------------------------- 4

IV.  **ARGUMENT** ------------------------------------------------------------------------------------------- 4

    A.   THERE IS NO PREEMPTION BY THE COPYRIGHT ACT ---------------------------------------- 4

    B.   PLAINTIFF CAN ALLEGED WRONGFUL ACTS ------------------------------------------------- 6

    C.   TIBRIO HAS SUFFICIENTLY ALLEGED PROSPECTIVE CONTRACTUAL RELATIONS -------------- 9

    D.   FLEX KNOWS THAT TIBRIO DOES NOT CREATE ADVERTISEMENTS FOR FREE ----------------- 9

    E.   TIBRIO HAS SUFFICIENTLY ALLEGED THAT THE ACT WAS DESIGNED TO DISRUPT THE RELATIONSHIP -------------------------------------------------------------------------------------- 10

    F.   THE DUTY OF CARE RELATIONSHIP EXISTS BETWEEN THE PARTIES -------------------------- 10

    G.   TIBRIO IS WILLING TO SUPPLEMENT WITH ACTUAL DISRUPTION --------------------------- 11

    H.   TIBRIO HAS ALLEGED ECONOMIC HARM PROXIMATELY CAUSED BY DEFENDANT'S ACTIONS 11

V. **CONCLUSION** ------------------------------------------------------------------------------------- 12

# TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal* 556 U.S. 662 (2009) ------------------------------------------------------------- 7

*BioResource, Inv. v. US Pharmaco Distrib., Ltd.,* 2010 U.S. Dist. LEXIS 69836 at p. 7 (N.D. Cal. 2010) --------------------------------------------------------------------------------------------------10

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 187 (S.C. Cal. 1999)----------------------------------------------------------------------------------------------11

*Crown Imports, LLC v. Superior Court,* 223 Cal.App.4th 1395, 1404 (2nd Dist. Ct. App. 2014) 9, 11

*Engalla v. Permanente Medical Group, Inc.,* 15 Cal.4th 951, 974 (S.C. Cal. 1997) ----------------12

*Grosso v. Miramax Film Corp.* 383 F.3d 965, 968 (9th Cir. 2004)------------------------------------ 8

*J'Aire Corp v. Gregory,* 24 Cal.3d 799, 804 (S.C. Cal. 1979) -----------------------------------------14

*Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1159 (S.C. Cal. 2003) ------- 10, 11

*Laws v. Sony8 Music Entm't, Inc.,* 448 F.3d 1135, 1126 (9th Cir. 2006) ----------------------------- 8

*LiMandri v. Judkins,* 52 Cal.App.4th 326, 349 (Cal. Ct. App. 1997) --------------------------------13

*Motors, Inc. v. Times Mirror Co.* 102 Cal.App.3d 735, 740 (Cal. Ct. App. 1980) ------------------11

*Oldcastle Precast, Inc., v. Granite Precasting & Concrete, Inc.,* 2010 US Dist. LEXIS 53775 at p. 8 (W.D. Wash. 2010)----------------------------------------------------------------------------------- 8

*Pacific Gas & Eletric Co. v. Bear Stearns & Co.* 50 Cal.3d 1118, fn 2 (S.C. Cal 1990). ----------- 9

*Shroyer v. New Cingular Wireless Service, Inc.* 622 F.3d 1035 (9th Cir. 2010)--------------------- 7

*Storm v. United States* 641 F.3d 1051 (9th Cir. 2011)-------------------------------------------------- 7

STATUTES

17 U.S.C. § 411 subd., (a) ------------------------------------------------------------------------------------ 7

Cal. Bus. & Prof. Code §17200-------------------------------------------------------------------------------10

RULES

Federal Rule of Civil Procedure 12(b)(6) ------------------------------------------------------------- 6

## I. INTRODUCTION

Plaintiff's Fourth Amended Complaint ("4AC") asserts two causes of action for negligent and intentional interference with prospective contractual relations. The 4AC is the first time Plaintiff Tibrio, LLC ("Plaintiff" or "Tibrio") has alleged these causes of action. Previously, Tibrio had alleged Copyright infringement which it dismissed after conducting further due diligence and hearing arguments from Defendant Flex Marketing, LLC ("Defendant" or "Flex"). Plaintiff then amended its Complaint to include causes of action for violation of Unfair Competition Laws. After an Order to Show Cause found that Tibrio was not entitled to damages under the UCL, Plaintiff requested leave to file the causes of action at issue now—which was granted.

Pursuant to this Court's rules, Defendant's counsel contacted Plaintiff's counsel to meet and confer on the alleged deficiencies contained in the 4AC. During that call, Defendant's counsel discussed minimal issues with the 4AC and had no substantive response to Plaintiff counsel's prepared arguments. When Plaintiff's counsel offered to save Flex attorney's fees for drafting a Motion to Dismiss and save this Court time reviewing a Motion to Dismiss by amending the Third Amended Complaint—Flex's counsel stated that it was trying to get Plaintiff's counsel sanctioned and felt that refusal of the request was the best way to accomplish that goal. There is no point to a meet and confer requirement if one of the parties is unwilling to work with the other. Further, the Motion to Dismiss filed by Defendant states multiple issues which were not discussed during the meet and confer call. *See* Declaration of Jacob A. Gillick, Esq. ("Gillick Decl.").

As described herein, Plaintiff can cure the alleged deficiencies cited by Defendant and has provided examples of those cures. Further, Defendant's arguments regarding preemption by Copyright laws, even though Plaintiff is not protected by the Copyright Act, fails. Flex is seeking a ruling which will allow it to steal the work of its competitors with impunity. Flex also seeks to punish Plaintiff for having to amend its claims and perfect its Complaint by harping on the fact that this is the fourth amendment. Nonetheless, Plaintiff requests leave to amend the 4AC to

1

resolve the alleged deficiencies.

## II.     STATEMENT OF FACTS

Tibrio, LLC ("Plaintiff" or "Tibrio") owns and operates many different properties, including the website thesavvysampler.com. Fourth Amended Complaint ("4AC"), Dkt. 37 ¶ 16. This site specifically brings in visitors by promising sponsored products ranging from snack foods to athletic clothing. *Ibid.*

To make money, Tibrio has developed a proprietary platform to collect information from consumers who visit their websites. Upon visiting thesavvysampler.com specifically, a consumer is presented with a list of different products to choose from. *Id.* at ¶ 17. Once a consumer has decided what they want, they are either re-directed to an advertiser's website or are asked a series of questions regarding demographics and interests in exchange for the free sample. *Id.* at ¶ 18.

Tibrio makes money with this process by either selling the consumers information to advertisers or allowing advertisers to put ads on the websites. *Id.* at ¶ 19. To command the highest price possible, Tibrio has spent years developing thousands of details which attract visitors and encourage them to click on an advertisement. *Ibid.* The details which make Tibrio's websites different, and more profitable, include the way some questions are asked for the opt-in; the style of a border around an advertisement; what type of incentive is offered by an advertiser; and the overall appeal of the website. *Id.* at ¶ 20. It took Tibrio years of research and millions of dollars in investments to learn the best recipe for success as thousands of aspects on the website required testing against the older version to see which will be more successful. *Ibid.* Something as simple as the style of border around an advertisement may increase overall sales by 7%. *Id.* This is why customers agree to work with Tibrio. *Id.*

Tibrio believes that it is their system and painstaking research by employees that has made the concept a success for so long. *Id.* at ¶ 21. Researching what method works the best, and building the websites tailored to that research, is what made Tibrio the success it was before its design was stolen by Defendant Flex Marketing, LLC ("Defendant" or "Flex"). *Ibid.* The market in which Tibrio conducts business is highly saturated and to gain traction and command a higher

price, a company must stand out. Many of the advertisers have a limited and capped budget. Money spent on other ad sites like Flex, immediately detracts from Tibrio's bottom line. In essence, for cyber advertisers it is a zero-sum game. *Id.* at ¶ 22.

In early 2023, it was brought to the attention of Tibrio that the imagery and property it has invested years of research in is flagrantly being used by Buzzworthy—a Flex property. *Id.* at ¶ 24. One of the initial steps in creating an advertisement for Tibrio's properties includes taking a picture of the item being promoted. *Ibid.* In 2018, Tibrio's employee Ian Straton took pictures of Adidas items for an advertisement which Buzzworthy has cut and paste for its own advertisements. *Id.* at ¶ 25. Another step in the process of creating an advertisement is the "copy" or language to entice the user to continue with the process. *Id.* at ¶ 26. This includes but is not limited to testing of different colors, punctuation, wording, emojis, shapes, and symbols. *Ibid.* Millions of dollars have been spent over the years by Tibrio to determine the exact language to accompany different incentive images it uses across its properties. *Id*. Flex took the exact language, symbols, image, copy, button, and disclosures used and developed by Tibrio as shown in the 4AC. *Id.*

Once Tibrio has obtained the attention of the consumer and caused them to click on the advertisement, they are brought to a page to enter in their information in exchange for the promoted item. *Id.* at ¶ 27. This is an important stage of the process because if the information is not obtained with consent to be shared, there is very little benefit to the consumer interaction. *Ibid.* Therefore, just like the first ad, thousands of different aspects of the data collection phase are carefully tested and planned to maximize the chance the consumer will fill in their information. *Id.* This includes promoting the item, not getting them bogged down in too much copy, appearing inviting, and crafting the shape/color of the continue button. *Id.* As shown by the 4AC, Buzzworthy has copied and pasted the aspects of Tibrio's strategy and imagery. *Id*. Therefore, Plaintiff seeks damages for negligent and intentional interference with prospective economic advantages.

## III. STATEMENT OF LAW

Under Rule 12(b)(6), a motion to dismiss tests the legal sufficiency of facts on the face of the complaint. *Storm v. United States,* 641 F.3d 1051, 1067 (9th Cir. 2011). To prevail, a plaintiff need show only that the complaint pleads plausible facts that would entitle the plaintiff to relief, if proven. *Shroyer v. New Cingular Wireless Service, Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV. ARGUMENT

### A. There is No Preemption by the Copyright Act

The preemption doctrine refers to the idea that a higher authority of law will displace the law of a lower authority when the two authorities come into conflict. As described below, there is no conflict between the Copyright Act and the causes of action alleged in Plaintiff's 4AC because Tibrio's works were not registered as copyrights and are therefore not protected by the Copyright Act. Defendant harps on the fact that Plaintiff's original complaint contained Copyright Infringement claims which it "moved to dismiss [] for the failure to state a claim because Tibrio does not have a copyright registration." Motion to Dismiss ("MTD") Dkt. 40, p. 1:14-15. Tibrio, after doing further due diligence, dismissed those claims. Now, Defendant states that all actions should be preempted by the Copyright Act even though no cause of action under the Copyright Act is plead and there are no registered copyrights at issue. No legal authority is cited which states that unregistered works are protected by the Copyright Act or preclude the state law claims alleged by Plaintiff.

"No civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copywritten claim has been made in

4

accordance with this title." 17 U.S.C. § 411 subd., (a). Tibrio has no registered copyrights and Defendant has failed to demonstrate that an unpled cause of action which Tibrio is not allowed to bring preempts the state causes of action.

In support of Defendant's MTD, it cites case law from the Western District of Washington and case law from the Ninth Circuit which discusses "registered copyrights." *Laws v. Sony Music Entm't, Inc.,* 448 F.3d 1135, 1126 (9th Cir. 2006) ["Elektra copyrighted the song"]. Even the Washington case, which is specific to Lanham Act—a cause of action not asserted by Tibrio-- states that "[t]he Ninth Circuit has declined to 'expend the scope of the Lanham Act to cover cases in which the <u>Federal Copyright Act provides an adequate remedy</u>." *Oldcastle Precast, Inc., v. Granite Precasting & Concrete, Inc.,* 2010 US Dist. LEXIS 53775 at p. 8 (W.D. Wash. 2010). Defendant relies heavily on this case despite the facts being markedly different from the instant matter and the fact that no adequate remedy is under the Copyright Act is available to Plaintiff. *Id.* at p. 2.

According to the *Oldcastle* case, "[t]he Copyright Act protects the right to reproduce, distribute, and display copyrighted materials, as well as the right to prepare derivative works based on the copyrighted material. 17 U.S.C. § 106. The act preempts state law with regard to 'all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of the copyright." *Id.* at p. 4. There is no registered work at issue in the instant matter which would provide any remedies under the Copyright Act or which would preempt the causes of action alleged in the 4AC. "To survive preemption the state law claim must include an 'extra element' that makes the right asserted qualitatively different from those protected by the copyright act." *Id. at* p. 5. Works not registred are not protected by the Copyright Act.

According to the 2004 Ninth Circuit case cited by Defendant, "[c]laims under state law are preempted where: (1) the work at issue comes within the subject matter of copyright, and (2) the state law rights are 'equivalent to any of the exclusive rights within the general scope of copyright.'" *Grosso v. Miramax Film Corp.* 383 F.3d 965, 968 (9th Cir. 2004). In *Grosso,* there were registered copyrights. "A claim for unjust enrichment was equivalent to a claim for copyright infringement, and thus preempted." *Ibid.* Those same facts do not exist here because

there is no claim for copyright infringement or protection provided by the Copyright Act. Therefore, Plaintiff requests that Defendant's argument of preemption be overruled.

### B. Plaintiff can Alleged Wrongful Acts

The elements for the tort of interreference with prospective economic advantage includes "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Pacific Gas & Eletric Co. v. Bear Stearns & Co.* 50 Cal.3d 1118, fn 2 (Cal. 1990).

Defendant appears to argue that there are no alleged facts sufficient to support the third element described above. Defendant attempts to argue that Plaintiff "must plead and prove the additional threshold element that defendant's interfering act was independently wrongful for reasons other than that it diverted plaintiff's business. [citation]. Thus, Courts properly dismiss intentional and negligent interreference claims when the complaint fails to allege that the defendant's interreference constituted an independently wrongful act. [citation]. Conduct is independently wrongful when it is proscribed by some determinable legal standard, like a constitutional, statutory, regulatory, or common law." MTD p. 8:20-9:1.

According to the case law cited by Defendant, "a plaintiff need not allege the interreference and a second act independent of the interreference. Instead, a plaintiff must plead and prove that the conduct alleged to constitute the interference was independently wrongful, i.e., unlawful reasons other than that it interfered with a prospective economic advantage." *Crown Imports, LLC v. Superior Court,* 223 Cal.App.4th 1395, 1404 (Cal. Ct. App. 2014).

Plaintiff's Third Amended Complaint ("TAC") alleged a cause of action for Defendant's violation of the Unfair Competition Laws. Dkt. 29. On December 1, 2023, this Court dismissed the UCL claims because there was no adequate remedy. Dkt. 35. Plaintiff still argues that the acts of Defendant violated the UCL which would be satisfy the unlawful act pleading standard. While

Defendant attempts to paint the December 1, 2023, Order as some sort of summary judgment, it is not. When Plaintiff's counsel admitted it missed this additional element and that it would be happy to include it in an amended complaint before Flex had to file a Motion to Dismiss or waste this Court's resources, Defendant's counsel refused. Gillick Decl., ¶ ____. Despite Plaintiff stipulating to additional time to file the Motion to Dismiss, Defendant's counsel was unwilling to return the favor. *See* Dkt. 38-39.

In support of Defendant's argument, it argues that because the UCL claim was dismissed on the basis of no actual remedy being available, Plaintiff is precluded from using the cause of action as its "independent wrongful act." Defendant's recitation of case law in its MTD is misleading. In *BioResource, Inc.v. US Pharmaco Distrib, Ltd,* cited by Defendant, the Northern District dismissed the UCL cause of action as follows: "although plaintiff asserts that its injuries are capable of being remedied through restitution [under the UCL], the complaint does not provide any factual detail regarding how this is so. Therefore, the Court GRANTS defendant's motion to dismiss and GRANTS plaintiff leave to amend this claim." *BioResource, Inv. v. US Pharmaco Distrib., Ltd.,* 2010 U.S. Dist. LEXIS 69836 at p. 7 (N.D. Cal. 2010). With regards to the Intentional Interference cause of action, the court granted leave to amend because the complaint does not actually allege that a UCL violation is the "wrongful" conduct to support the claim. *Id.* at p. 9. This case does not analyze, nor does it stand for the conclusion that for an act to be "independently wrongful" there must also be recoverable damages.

Plaintiff argues that the "wrongful act" is separate and distinct from the ability to recover statutory damages. "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1159 (S.C. Cal. 2003). "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17200. There is no reference to damages. "California Business and Professions Code section 17200 borrows violations from other laws by making them independently actionably as unfair competitive practice. In addition, under § 17200, a practice may be deemed unfair even if not specifically

proscribed by some other law." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1143. "A determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balance against the reasons, justifications and motives of the alleged wrongdoer." *Motors, Inc. v. Times Mirror Co.* 102 Cal.App.3d 735, 740 (Cal. Ct. App. 1980). "When a plaintiff who claims to have suffered injury from a direct competitors 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that. . . significantly threatens or harms competition." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 187 (Cal. 1999).

As alleged in the 4AC, "[t]he market in which Tibrio conduct business is highly saturated and in order to gain traction and command a higher price, a company must stand out. Many of the advertisers have a limited and capped budget. Money spent on other ad sites like [Flex], immediately detracts from Tibrio's bottom line. In essence, for cyber advertisers it is a zero-sum game." 4AC ¶ 22. "In early 2023, it was brought to the attention of Tibrio that the imagery and property it has invested years of research in is flagrantly being used by [Flex]." *Id.* at ¶ 24. The unauthorized use of Tibrio's property harms competition based on the merits of its product. This is the independent wrongful act. If the Court finds that these allegations must be further specified, Plaintiff requests leave to amend these two newly alleged causes of action and include references to the UCL.

In the alternative, Plaintiff requests leave to amend to include allegations of how the acts were wrongful to a third party. "The question has arisen as to whether, to be actionable as interference with prospective economic advantage, the interfering act must be independently wrongful as to the plaintiff. It need not be. There is no 'sound reason for requiring that a defendant's wrongful actions must be directed towards the plaintiff seeking to recover for this tort. The interfering party is liable to the interfered-with party even when the independently tortious means the interfering party uses are independently tortious only as to a third party." *Crown Imports, LLC v. Superior Court,* 223 Cal.App.4th 1395, 1405 (2nd Dist. Ct. App. 2014).

The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity; (c) intent to

defraud, i.e., induce reliance; (d) justifiable reliance; and (e) resulting damage. *Engalla v. Permanente Medical Group, Inc.,* 15 Cal.4th 951, 974 (Cal. 1997). Plaintiff is prepared to allege as a "wrongful act" that the clients who purchased leads procured through the stolen advertisement were defrauded as, (a) Defendant represented that the advertisement and its business practices were unique and proper, (b) Defendant knew that it had used Tibrio's property, (c) Defendant intended for its clients to believe that its business practices were unique and proper, (d) the clients had no reason not to rely on that representation and, (e) the clients were harmed as the improper practices of obtaining leads renders the leads unusable, causing damages in the amount spent by the client to purchase the leads. Plaintiff requests it be allowed to further allege these issues to substantiate its causes of action.

### C. Tibrio has Sufficiently Alleged Prospective Contractual Relations

Defendant argues that Plaintiff is required to list all of its clients in its 4AC. Tibrio has alleged that existing advertisers and publishers are the clients whom the relationship has been interrupted. 4AC ¶¶ 7, 34. There are multiple advertisers and publishers that Tibrio works with on a regular basis and the complete disclosure of all clients at this stage would be improper and possibly cause further harm. That being said, Plaintiff requests leave to amend in order to name some clients such as Digital Media Solutions, Powersource, and SelectQuote in the Complaint as examples of advertisers/publishers whom Flex interrupted relations with. Based on this being the first challenge by Defendant to these new causes of action, and Defendant's refusal to stipulate to an amended complaint, Plaintiff requests leave to amend.

### D. Flex Knows that Tibrio does Not Create Advertisements for Free

Flex argues that it is unaware of any relationships Tibrio has with publishers or advertisers. As described above, Tibrio is prepared to name some of the clients. Tibrio has sufficiently alleged that there is knowledge of the relationships and that "[t]he market in which Tibrio conducts business is highly saturated and in order to gain traction and command a higher price, a company must stand out. Many of the advertisers have a limited and capped budget. Money spent on other ad sites like [Flex], immediately detracts from Tibrio's bottom line. In essence, for cyber

advertisers it is a zero-sum game." 4AC ¶ 22. Flex also stole a very specific advertisement with knowledge that it would generate specific leads that advertisers/publishers are looking for. Had Flex not known of prospective advantages of the advertisement, it would not have blatantly stolen it. Plaintiff is prepared to add these additional details to the Complaint if this Court deems it proper. Plaintiff was prepared to amend the Complaint after meeting and conferring but Defendant refused the request.

### E. Tibrio has Sufficiently Alleged that the Act was Designed to Disrupt the Relationship

Defendant complains that "Tibrio alleges no time frame and does not explain how Flex's conduct caused Tibrio economic loss." Oppo p. 12:25-26. It is unclear from the MTD what time frame Flex seeks. Further, Tibiro has alleged that "[t]he market in which Tibrio conducts business is highly saturated and in order to gain traction and command a higher price, a company must stand out. Many of the advertisers have a limited and capped budget. Money spent on other ad sites like [Flex], immediately detracts from Tibrio's bottom line. In essence, for cyber advertisers it is a zero-sum game." 4AC ¶ 22. Tibrio has sufficiently made the allegations to support the argument that the acts were designed to knowingly disrupt the relationship.

### F. The Duty of Care Relationship Exists between the Parties

Pursuant to the legal authority cited by Defendant in its MTD, "[t[he key component in determining whether the relationship between plaintiff and defendant in such cases give rise to a duty of care is the foreseeability of the harm suffered by the plaintiff. Foreseeability is generally measured by the closeness of the connection or nexus between the defendant's conduct and risk of injury to the plaintiff—that is, whether the defendant had 'entered into any relationship or undertaken activity where negligence on this part was reasonably likely to affect plaintiff adversely." *LiMandri v. Judkins,* 52 Cal.App.4th 326, 349 (Cal. Ct. App. 1997). The following elements are used to determine if a duty of care exists: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendants

conduct and (6) the policy of preventing future harm. *J'Aire Corp v. Gregory,* 24 Cal.3d 799, 804 (S.C. Cal. 1979).

Plaintiff requests leave to detail these elements in its Complaint. First, stealing Tibrio's advertisement was intended to take advertisers and publishers away from Plaintiff—as discussed above, this is a zero-sum game when it comes to advertisers and publishers. Second, Flex could foresee the harm when it used Tibrio's advertisement and sold the leads to advertisers and publishers trying to contact those interested in Adidas. Third, as described by the 4AC, Defendant was certain that Tibrio would suffer damages and harm when leads clicked on Flex's advertisement and the publishers/advertisers purchased said leads from Flex instead of Tibrio. Fourth, it was Defendant's misappropriation of the advertisement that caused the harm directly. Fifth, Flex is to blame for finding Tibrio's advertisement and copying it for its own pecuniary gain. Sixth, a cause of action against Flex is proper to prevent it from undertaking this kind of improper and repugnant action in the future.

Based on the ability of Tibrio to allege the elements necessary to establish a duty of care, leave to amend is requested. Flex's argument that a duty of care must be fiduciary ignores the findings of the California Supreme Court. Plaintiff can cure this deficiency and respectfully requests the ability to do so.

### G. Tibrio is Willing to Supplement with Actual Disruption

Flex alleges that Tibrio failed to point to any company or opportunity that was disrupted. As described above, Plaintiff is ready and willing to name specific entities whose relationship was interrupted. Plaintiff requests leave to amend the complaint with further details.

### H. Tibrio has Alleged Economic Harm Proximately Caused by Defendant's Actions

Tibrio has alleged that "[t]he market in which Tibrio conduct business is highly saturated and in order to gain traction and command a higher price, a company must stand out. Many of the advertisers have a limited and capped budget. Money spent on other ad sites like [Flex], immediately detracts from Tibrio's bottom line. In essence, for cyber advertisers it is a zero-sum game." 4AC ¶ 22. Flex intentionally copying the advertisements of Tibrio to obtain specific leads

sought by advertisers and publishers has caused Tibrio economic harm. Tibrio has sufficiently alleged economic harm and how it is caused. Tibrio has also agreed to name specific relationships which were disrupted and furthers the argument of economic harm.

## V. CONCLUSION

These causes of action for negligent and intentional interference with prospective economic advantage are being plead for the first time despite this being the 4AC. Defendant Flex argues that because this is the 4AC, Plaintiff should be precluded from amending its claims to address the deficiencies it has identified. When Tibrio's counsel Jacob Gillick spoke with Defendant's counsel and requested a joint motion to amend, Flex's counsel made it clear that he wanted to harm Mr. Gillick personally and was trying to get him sanctioned for the multiple amendments. Gillick Decl., ¶ ___. Not only does this tactic spit in the face of this Court's meet and confer requirements, but it is unsupported by any law which limits amendments to new claims. As described in detail here, Plaintiff can cure the deficiencies and move this case forward. The alternative is Flex receiving the "thumbs up" for stealing the hard work of Plaintiff for its own gain. Therefore, Plaintiff respectfully requests leave to amend and file a Fifth Amended Complaint.

                                              Respectfully submitted,

                                              **Gillick Legal, APC**

Dated: January 17, 2024                */s/ Jacob A. Gillick*
                                                             Jacob A. Gillick, Esq.
                                                             jgillick@gillicklegal.com
                                                             Attorneys for Plaintiff